UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA TAYLOR-DAVID,

       Plaintiff,                                    Hon. Janet T. Neff

v.                                                 Case No. 1:18-cv-263

GUARDIAN LOAN COMPANY
OF MASSAPEQUA, INC., et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant's Motion to Dismiss</u>, (ECF No. 42), and <u>Defendants' Motion to Dismiss</u>, (ECF No. 43). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **granted** and this action **terminated**.

## BACKGROUND

The following allegations are contained in Plaintiff's amended complaint. (ECF No. 40). On September 20, 2005, Plaintiff borrowed $180,300.00 from Guardian Loan Company Inc. of Massapequa (Guardian). This loan was secured by a mortgage on property located at 2439 McNabb Court, Traverse City, Michigan. This mortgage was assigned to Mortgage Electronic Registration Systems Inc. (MERS). On February 6, 2009, MERS attempted to assign Plaintiff's mortgage to U.S. Bank National Association, as Trustee for Credit Suisse First Boston. The purported mortgage assignment was executed by Ellen Coon, a lawyer with the law firm Trott & Trott. Coon, however, lacked authority to execute the mortgage assignment documents.

On April 27, 2017, Orlans, P.C. (Orlans) sent Plaintiff correspondence stating that her mortgage "will be foreclosed by a sale of the mortgaged premises."  On September 18, 2017, Wells Fargo Home Mortgage (Wells Fargo) sent Plaintiff correspondence stating that her property "has been referred to foreclosure."  On February 5, 2018, Orlans sent Plaintiff correspondence stating that because her "mortgage loan is in default. . .the mortgage loan has been accelerated."

On April 24, 2018, Plaintiff received an email from a representative of the Grand Traverse County Sheriff's Department informing her that "there had been two recent foreclosure sales on [her home], the first on December 6, 2017 and again on March 21, 2018 and the buyer in both cases was 'the bank.'"  Neither of these purported foreclosure sales were preceded by the notifications required under Michigan law.  Plaintiff subsequently learned that the entity which purchased her house on March 21, 2018, was Credit Suisse First Boston Mortgage Securities Corporation.

On September 17, 2018, Plaintiff amended her complaint asserting a variety of claims against Credit Suisse First Boston (Credit Suisse), Orlans, P.C. (Orlans), and Wells Fargo Home Mortgage (Wells Fargo).  Specifically, Plaintiff alleges violations of the Fair Debt Collection Practices Act (FDCPA) and the Racketeer Influenced and Corrupt Practices Act (RICO), as well as state law claims for wrongful foreclosure, slander of title, and intentional infliction of emotional distress.  Plaintiff seeks monetary damages of several million dollars.  Defendants now move to dismiss Plaintiff's claims for failure to state a claim on which relief may be granted.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most

favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the

case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein.  *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

## ANALYSIS

I.         **Fair Debt Collection Practices Act**

The Fair Debt Collections Practices Act (FDCPA) prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."   15 U.S.C. § 1692e.   Specifically, Plaintiff alleges that certain communications by Defendants violated 15 U.S.C. § 1692e(2)(A) which prohibits false representations of "the character, amount, or legal status of any debt."   To run afoul of § 1692e, a communication must be "*materially or misleading*" which "simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer."  *Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012).

As noted above, Plaintiff alleges that on April 27, 2017, Orlans sent her correspondence stating that her mortgage "will be foreclosed by a sale of the mortgaged premises."  Plaintiff also alleges that on September 18, 2017, Wells Fargo sent her correspondence stating that her property

"has been referred to foreclosure."  Plaintiff alleges that these communications violated the FDCPA because Orlans and Wells Fargo both knew that Plaintiff's mortgage had been improperly assigned to a non-existent trust.  Plaintiff further alleges that these communications violate the FDCPA because Orlans and Wells Fargo both knew that Plaintiff's home had been sold at foreclosure in 2017 thus extinguishing her obligations under the mortgage.

While Plaintiff may believe that her mortgage had been improperly assigned and that Orlans and Wells Fargo were aware of such, neither of the communications in question contained a representation regarding the previous assignment of Plaintiff's mortgage.  Instead, these communications simply informed Plaintiff that she was delinquent in her mortgage obligations, something which Plaintiff does not dispute.  Thus, Plaintiff has failed to allege that these communications contained a materially false or misleading statement which states a claim under the FDCPA.

As for Plaintiff's allegation that Defendant's communications were false or misleading because her house had already been sold at foreclosure, the result is the same.  As noted above, when considering a motion to dismiss for failure to state a claim the Court may consider evidence referenced in Plaintiff's amended complaint and relevant to her claims.  In her amended complaint, Plaintiff alleges that her house was sold at a foreclosure sale.  While Plaintiff alleges that this sale preceded the communications at issue, evidence submitted by Defendants reveals that Plaintiff's house was sold at foreclosure on March 21, 2018, after the communications in question.  (ECF No. 42-8 at PageID.429-30).  Thus, Plaintiff has failed to allege that the communications in question were materially false or misleading.  Accordingly, the undersigned recommends that Defendants' motions to dismiss be granted as to Plaintiff's FDCPA claims.

**II.         Racketeer Influenced and Corrupt Organizations Act**

Plaintiff next alleges that Defendants all violated the Racketeer Influenced and Corrupt Organizations Act (RICO) by falsely communicating to her that she was in default of her mortgage obligations. To state a claim for violation of RICO, Plaintiff must allege that a defendant engaged in (1) conduct; (2) of an enterprise; (3) through a pattern, (4) of racketeering activity. *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). However, it is not enough to merely allege that a defendant engaged in a pattern of unlawful conduct.

One of the things that distinguishes a RICO claim from other causes of action is that the allegations underlying a RICO claim "must have sufficient continuity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006). In this context, continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Ibid.* Plaintiff's allegations only concern her mortgage and, therefore, do not satisfy this latter requirement. Plaintiff's allegations of improper conduct over a brief period with a single goal, the improper foreclosure of her house, likewise fail to constitute a "closed period of repeated conduct." *See id.* at 724-26 (a "coordinated scheme" designed toward a "single objective" "does not bear the markings of the 'long-term criminal conduct' about which 'Congress was concerned' when it enacted RICO"). Accordingly, the undersigned recommends that Defendants' motions to dismiss be granted as to Plaintiff's RICO claims.

**III.        Wrongful Foreclosure and Slander of Title**

Plaintiff next alleges that Defendants wrongfully foreclosed on her house and thereby slandered her title thereto. Plaintiff alleges in her complaint that her home was foreclosed by

-6-

advertisement, also known as non-judicial foreclosure.[1]   When a house is foreclosed in this manner, the mortgagor is afforded a six-month period to redeem the property.  *See Conlin v. Mortgage Electronic Registration Systems, Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (interpreting Michigan law).  However, once this statutory redemption period expires, "the mortgagor's right, title, and interest in and to the property are extinguished."  *Ibid.* (interpreting Michigan law).  Moreover, initiating legal action does not toll the statutory redemption period.  *See Bethel Deliverance Tabernacle International v. Vigneron*, 2016 WL 1719143 at *2 (Mich. Ct. App., Apr. 28, 2016); *Gorbach v. US Bank National Assoc.*, 2014 WL 7440290 at *4 (Mich. Ct. App., Dec. 30, 2014).

Once the statutory redemption period expires, a foreclosure sale can be set aside only where the mortgagor makes "a clear showing" of fraud "related to the foreclosure process itself." *Garcia v. Federal National Mortgage Assoc.*, 2014 WL 2210784 at *3-4 (W.D. Mich., Apr. 30, 2014) (interpreting Michigan law).  The mortgagor must further demonstrate that "she was prejudiced by the defendant's failure to comply with the requirements of the foreclosure statute."  *Id.* At *4 (interpreting Michigan law).   To make this showing, the mortgagor must show "that she would have been in a better position to preserve her interests absent the fraud."  *Ibid.* (interpreting Michigan law). Because Plaintiff has not alleged that Defendants committed fraud "related to the foreclosure process itself," she cannot avail herself of this exception.[2]   Thus, because the six-month redemption period has expired, Plaintiff's rights in the subject property have been extinguished and her wrongful

---

[1]  Foreclosure by advertisement is expressly permitted by Michigan law.   *See* Mich. Comp. Laws § 600.3204; *Senters v. Ottawa Sav. Bank*, *FSB*, 503 N.W.2d 639, 641 (Mich. 1993).

[2]  While Plaintiff alleges that the assignment of her mortgage was fraudulent, such allegations do not implicate the "foreclosure process itself."

foreclosure and slander of title claims fail. Accordingly, the undersigned recommends that Defendants' motions to dismiss be granted as to these particular claims.

### IV.	Intentional Infliction of Emotional Distress

Finally, Plaintiff alleges that by threatening her with foreclosure after her home had already been sold at foreclosure, Defendants committed the tort of intentional infliction of emotional distress. To prevail on their claim of Intentional Infliction of Emotional Distress (IIED), Plaintiff must allege: (1) defendant's extreme and outrageous conduct; (2) defendant's intent or recklessness; (3) causation; and (4) the severe emotional distress of the plaintiff. *Ghannam v. Weiss*, 2013 WL 3025143 at *1 (Mich. Ct. App., June 18, 2013). In the context of an IIED claim, "extreme and outrageous conduct" has been defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yost v. Paychex, Inc.*, 1998 WL 1989811 at *16 (Mich. Ct. App., Sept. 29, 1998).

As previously discussed, Plaintiff's house was sold at foreclosure in March 2018, *after* the communications she alleges constitute intentional infliction of emotional distress. The comments at issue actually preceded the foreclosure sale of Plaintiff's house and represented nothing than Plaintiff's creditors exercising their legal rights. As such, these statements cannot reasonably be characterized as outrageous or otherwise actionable. Accordingly, the undersigned recommends that Defendants' motions be granted as to this claim.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant's Motion to Dismiss, (ECF No. 42), be **granted**; Defendants' Motion to Dismiss, (ECF No. 43), be **granted**; and this action **terminated**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: January 22, 2019

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge